IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

SARAH LOUISE COWLEY, )
)
    Plaintiff, )
) Case No. 1:13-cv-00145
v. ) Senior Judge Haynes
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security, )
)
    Defendant. )

# MEMORANDUM

Plaintiff, Sarah Louise Cowley, filed this action under 42 U.S.C. § 405(g) against the Defendant Carolyn Colvin, acting Commissioner of Social Security, seeking judicial review of the Commissioner's denial of her application for supplemental security income ("SSI") under the Social Security Act. On June 25, 2010, Plaintiff filed a claim for SSI alleging an onset date of December 31, 2008, which was later amended to June 25, 2010. Plaintiff cited bipolar disorder and a learning disability as the basis of her claim. After a hearing, the Administrative Law Judge ("ALJ") denied Plaintiff's claims.

In sum, the ALJ evaluated Plaintiff's claim for SSI benefits using the sequential evaluation process set forth at 20 C.F.R. § 416.920. (Docket Entry No. 10, Administrative Record at 14-15). At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since her amended alleged onset date. Id. at 15. At step two, the ALJ determined that Plaintiff had the following severe impairments: mood disorder and anxiety disorder, not

otherwise specified, with a history of post-traumatic stress disorder. Id. at 15-16. At step three, the ALJ found that Plaintiff did not prove an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 16. The ALJ did not find that Plaintiff had any exertional limitations, but did apply the following nonexertional limitations:

> The claimant can understand and remember a simple and limited range of detailed (one to three step) tasks and instructions; sustain adequate persistence and pace for above tasks for two-hour segments across a normal workday and work week; adapt and respond to changes in a routine work setting given reasonable support and structure; and make/set simple work-related plans and goals independently but may have difficulty with more complex decision-making. The claimant can interact and get along adequately with general public, co-workers and supervisors for purposes of task completion. However, she appears better suited for thing-versus-people-oriented type work in non-public, object-focused job setting. Additionally, interactions with others in the workplace should be occasional, brief, task-focused and incidental to task completion.

Id. at 18. The ALJ also consulted with a vocational expert, and found that Plaintiff could not return to her past relevant work, but that Plaintiff did have the capacity to perform jobs that existed in significant numbers in the economy. Id. at 22-23. Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act and was not entitled to disability benefits. Plaintiff requested review on July 10, 2012, and the request was denied on September 27, 2013. Id. at 6-9, 1-3.

Before the Court is Plaintiff's motion for judgment on the administrative record (Docket Entry No. 12) to which the Commissioner filed a response (Docket Entry No. 15) and Plaintiff filed a reply (Docket Entry No. 18). After review of the parties' motion papers and the administrative record, the Court concludes that Plaintiff's motion for judgment on the record should be denied.

## A. Review of the Record

The Administrative Record reflects that Plaintiff is a 31 year old woman, with an 11th-grade education. (Docket Entry No. 10, Administrative Record at 22). Plaintiff's most recent work history was as a packager at a pencil factory, where she worked for eight months in 2006. Id. at 137. Plaintiff alleged a disability onset date of December 31, 2008 originally, which was later amended to June 25, 2010. Id. at 132. Plaintiff filed an SSI claim on June 25, 2010, and it was denied on January 1, 2011. Plaintiff applied for reconsideration on March 23, 2011, and requested a hearing on April 14, 2011. After a hearing, the ALJ concluded Plaintiff was not disabled on April 17, 2012. Plaintiff requested review on July 10, 2012, and was denied on September 27, 2013.

The administrative record contains several reports predating the alleged onset date of disability. From October 26, 2006 to October 31, 2006, Plaintiff was admitted to the Tennessee Christian Medical Center. Id. at 214-221. She was diagnosed with major depressive disorder, post-traumatic stress disorder, polysubstance abuse, and personality disorder. Id. at 214. Plaintiff was noted to have had suicide attempts and a history of sexual abuse. Id. Plaintiff was "alert, well oriented," her "thought processes were linear and goal directed," and she had "no hallucinations or delusions." Id. at 220. Plaintiff's "concentration was mildly impaired," her "memory for recent and remote events was good," "insight was partial," and "judgment showed recent impairment." Id. Plaintiff was detoxed and discharged to the Mental Health Cooperative for medication management and the Hope Program for alcohol and drug treatment. Id. at 215.

From June 16, 2009 to June 19, 2009, Plaintiff was admitted to the Middle Tennessee Mental Health Institute. Id. at 222-239. On admission, Plaintiff's report stated that she

"attempt[ed] suicide by stabbing herself with a needle. Patient also threatened to cut her boyfriend's head off and to kill her mother and stepfather who live in [Michigan]." Id. at 239. The staff noted that Plaintiff had been "previously [inpatient] at TCMC last year for depression. Stopped meds and outpatient treatment." Id. at 230. After admission, Plaintiff denied suicidal or homicidal ideation and was not observed to have self-injurious or physically aggressive behavior. Id. A report written before discharge diagnosed her with Bipolar 1 Disorder, most recent episode depressed, without psychotic features, and Rule Out Borderline Personality Disorder. Id. at 237. On her last day, Plaintiff "request[ed] discharge with boyfriend, [saying] 'I feel much better.'" Id. at 226. Her Axis I Clinical Disorder diagnosis upon discharge was major depressive disorder, recurrent, severe without psychotic features. Id. at 222. Plaintiff also has medical records from Centerstone on the same dates. Id. at 243-247.

Following Plaintiff's evaluation at Centerstone, she was prescribed ongoing individual therapy. Id. at 247. Plaintiff had a follow up appointment on June 24, 2009, during which she "denied any [suicidal ideation/homicidal ideation] or psychosis, but stated she is still depressed and having anxiety and some adgitation (sic)." Id. at 249. Plaintiff had another follow up appointment on July 7, 2009 and "denie[d] hopelessness and denie[d] any [suicidal ideation] and [homicidal ideation] ideas or plans," "denie[d] any psychosis," and "ha[d] no flashback of sex abuse and also denie[d] for nightmares." Id. at 258. On August 5, 2009, August 6, 2009, August 12, 2009, September 10, 2009, September 22, 2009, and October 20, 2009, Plaintiff missed or cancelled her follow up appointments at Centerstone. Id. at 248, 251, 252, 253, 255, 256, 257. On January 22, 2010, Centerstone officially terminated treatment, noting that Plaintiff had not been seen since July 7, 2009. Id. at 272-73.

Plaintiff filed an SSA claim on June 25, 2010. On October 20, 2010, Plaintiff was "referred for psychological assessment by Tennessee Disability Determination Services" to Dr. Mark Petro. Id. at 275-277. "When [Plaintiff] was asked who constituted her childhood family, she stated she did not know, began crying, left the office, slamming the door, ranting in the hallway. She was in the ladies' room with this examiner able to hear her through the open doors and she was becoming increasingly agitated. This examiner told the claimant that the examination was over and that she could go." Id. at 276. Because of this incident, "the examiner did not develop a working diagnostic hypothesis for the claimant." Id. at 277. On December 17, 2010, Plaintiff was again examined by Dr. Petro. Id. at 279-83. On this visit, Dr. Petro was able to diagnose Plaintiff with anxiety disorder and depressive disorder. Id.

On January 18, 2011, state psychological reviewer Dr. Robert Paul evaluated Plaintiff's medical records. Id. at 285. The "medically determinable impairments" that Dr. Paul noted include "[Mood Disorder, not otherwise specified (rule out Major Depressive Disorder vs Bipolar Disorder)]" and "[Anxiety Disorder not otherwise specified, history of PTSD]." Id. at 288, 290. Under "Personality Disorders," Dr. Paul checked "[i]nflexible and maladaptive personality traits which cause either significant impairment in social or occupational functioning or subjective distress, as evidenced by at least one of the following:" then checked "[p]ersistent disturbances of mood or affect" and "[i]ntense and unstable interpersonal relationships and impulsive and damaging behavior," then wrote in, "[Personality Disorder not otherwise specified]." Id. at 292. Dr. Paul marked "moderate" limitations in Plaintiff's "restriction of activities of daily living," "difficulties in maintaining social functioning" and "difficulties in maintaining concentration, persistence, or pace." Id. at 295. In his comments, Dr. Paul wrote,

5

"[a]lleged [symptoms] and limitations are partially credible. While identified mental impairments could reasonably be expected to produce the reported [symptoms], [claimant's] report with regard to intensity, persistence, and/or degree of limitation is not supported by objective evidence." Id. at 297. On January 26, 2011, Plaintiff's claim was denied.

Plaintiff applied for reconsideration on March 23, 2011. That same day, Dr. Mason Currey, Ph.D. conducted a file review of Plaintiff's medical records. Id. at 303. Dr. Currey wrote, "Recon Report: I have reviewed all the evidence in file including the newly submitted ADLs, and the assessment of 1/18/11 is affirmed as written." Id.

Plaintiff requested a hearing on April 14, 2011. After a hearing, the ALJ concluded Plaintiff was not disabled on April 17, 2012. Plaintiff requested review on July 10, 2012, and was denied on September 27, 2013.

## B. CONCLUSIONS OF LAW

In reviewing the Commissioner's decision, this Court determines whether substantial evidence exists in the record to support the Commissioner's decision and whether any legal errors were committed in the process of reaching that decision. Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" is "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." Her v. Commissioner, 203 F.3d 388, 389 (6th Cir. 1999) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla of evidence, but less than a preponderance." Bell v. Commissioner, 105 F.3d 244, 245 (6th Cir. 1996) (citing Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the

conclusion reached. Her, 203 F.3d at 389 (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. Hurst v. Secretary, 753 F.2d 517, 519 (6th Cir. 1985) (citing Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980)).

In this action, Plaintiff contends that (1) the ALJ failed to evaluate the opinion of a treating mental health provider, (2) the ALJ failed to consider the evaluation of consultant Dr. Mark Petro, and (3) the ALJ failed to properly consider treatment notes and GAF scores.

The ALJ assigned "little weight" to the opinion of Barbara R. Green, Plaintiff's treating mental health provider. Id. at 21. Plaintiff asserts that in accordance with Social Security Ruling 06-03p, Ms. Green's opinion should have been treated differently. The ALJ did not assign Ms. Green's opinion "little weight" because he did not properly consider her an "other source" in accordance with SSR 06-03p. The ALJ assigned Ms. Green's opinion "little weight" because the "assessment [wa]s not consistent with her own treatment notes from one month prior, which indicated the claimant's condition was improving." Id.

On January 13, 2012, Ms. Green completed both a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" and a "Progress Note," a report of her appointment with Plaintiff. Id. at 320, 352. In the MSS, Ms. Green indicated that Plaintiff had an "extreme restriction" to "understand and remember complex instructions," to "carry out complex instructions," and to "make judgments on complex work-related decisions." Id. at 320. Plaintiff had a "marked restriction" to "understand and remember simple instructions" and to "make judgments on simple work-related decisions." Id. Plaintiff also had "extreme restrictions" to "interact appropriately with the public," "interact appropriately with supervisor(s)" (for these,

7

"marked restriction" was checked, with arrows drawn pointing to "extreme restriction"), "interact appropriately with co-workers," and to "respond appropriately to usual work situations and to changes in a routine work setting." Id. Ms. Green observed that Plaintiff "has difficulty with authority" and that she "has threatened people when she gets overwhelmed with instructions." Id. On that day's visit, Ms. Green noted that Plaintiff was "overwhelmed with worry about [the disability] process." Id. at 352. Plaintiff had "relapsed to psychotic symptoms" with "auditory and visual hallucinations" and had increased "depression and anxiety." Id.

One month earlier, on December 21, 2011, Ms. Green noted that Plaintiff had made "some improvement" and was taking a new medication. Id. at 360. Prior to that assessment, on November 2, 2011, Ms. Green had also noted that Plaintiff made "some improvement" but that "relationships are difficult for her," and she was at the time conflicted about the illness of her step-father, who had previously abused her. Id. at 380.

Under SSR 06-03p, "'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Then, in evaluating the opinion of a non-acceptable medical source, one factor to consider is "whether the opinion is consistent with other evidence." The ALJ found that Ms. Green's MSS was not consistent with other evidence, and so assigned it "little weight."

Next Plaintiff argues that "the ALJ failed to properly consider and evaluate the opinion of the consultative examining physician, Dr. Mark Petro." (Docket No. 12 at 14). The ALJ

discussed the opinion of Dr. Petro throughout his RFC assessment both explicitly and when evaluating Plaintiff's daily activities and inconsistencies in her statements. (Docket Entry No. 10, Administrative Record at 20-22). First, the ALJ found that Dr. Petro's "mild to moderate" and "moderate to severe" guidelines were overly broad. Dr. Petro wrote in his "Functional Assessment" of Plaintiff:

> She may demonstrate mild-to-moderate difficulty in her ability to consistently understand complex instructions, directions, and procedures within the job site. She may demonstrate mild difficulty in her ability to consistently remember complex instructions, directions, or procedures within the work setting. She may demonstrate mild-to-moderate difficulty in her ability to exhibit sustained concentration and persistence for making complex work-like decisions within the work environment. She may demonstrate moderate-to-severe difficulty in her ability to persist during workdays without interruptions from psychological symptoms. She may demonstrate mild-to-moderate difficulty in her ability to consistently and appropriately interact with peers, supervisors, and the public within the job setting. She may demonstrate mild difficulty in her ability to consistently and appropriately respond to changes in the job schedule on an independent basis. She may demonstrate moderate-to-severe difficulty in her ability to consistently and appropriately take needed precautions against recognized hazards within the workplace.

Id. at 282.

The ALJ found that "[t]he ranges of mild to moderate and moderate to severe [were] too broad to give significant weight." Id. at 20. Next, the ALJ observed that Dr. Petro did not consider Plaintiff's history of drug use in his recommendation. Dr. Petro noted in "Chemical Use History" that Plaintiff "stated her history is remarkable for past social use of alcohol and cannabis. She stated she last used alcohol nine years ago. She reporteda (sic) history of one past treatment and no arrest related to the use of mood-altering chemicals." Id. at 281. Yet Dr. Petro did not include any mention of Plaintiff's drug use in his Functional Assessment. The ALJ observed that "Dr. Petro did not address the claimant's history of polysubstance abuse or its effect on his assessment." Id. at 20. Because the ALJ found Dr. Petro's guidelines too broad,

9

and because Dr. Petro did not incorporate Plaintiff's history of drug use, the ALJ concluded that "this opinion is given little weight."

Finally, Plaintiff alleges that the ALJ did not properly consider and evaluate various treatment notes and GAF scores.

As an initial matter, Global Assessment of Functioning (GAF) scores are not determinative of disability for Social Security purposes. In fact, the Social Security Administration has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements in [the] mental disorders listings." See Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746-01 (August 21, 2000). "While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate." Howard v. Commissioner, 276 F.3d 235, 241 (6th Cir. 2002). Here, the ALJ did not reference a GAF score in the RFC, although he did note several "nonexertional limitations." The ALJ did allow Plaintiff's counsel to present a hypothetical to the vocational expert which included "the consultive examination of a GAF score of 44." Id. at 52. The vocational expert's response was unrelated to the GAF score, and was instead determined by the hypothetical "moderate to severe [in]ability to persist during workdays without interruptions from her psychological symptoms." Id.

As to consideration of various treatment notes, Plaintiff restates her medical history and asserts, "greater weight should be given to the treatment notes, CRG assessments, medical records, GAF scores and the opinions of Dr. Petro and Ms. Green, **as all of this evidence is**

10

**consistent** and provides support to Ms. Cowley's subjective complaints regarding her mental conditions." (Docket No. 12, Motion for Judgment on the Record, at 21, emphasis in original). The ALJ did consider Plaintiff's medical history. In his report, the ALJ begins discussing Plaintiff's treatment history in 2009, which is a year and a half before the alleged onset of disability. (Docket Entry No. 10, Administrative Record at 19). The ALJ then continues through Plaintiff's treatment history up to a December 21, 2011 Centerstone visit. Id. at 20. Additionally, the ALJ specifically noted the Clinically Related Group (CRG) form completed on June 16, 2009. He observed, "[t]he CRG form was completed before the claimant's alleged onset date, thus diminishing its relevance. Further, as evidenced above, the claimant's condition subsequently improved. Therefore, this assessment is given little weight." Id. The ALJ's discussion of Dr. Petro, Ms. Green, and the GAF scores have been noted above.

When analyzing the claimant's subjective complaints, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. See Felisky v. Bowen, 35 F.3d 1027, 1039 (6th Cir. 1994) (construing 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. See, e.g., Walters v. Commissioner, 127 F.3d 525, 531 (6th Cir. 1997); Blacha v. Secretary, 927 F.2d 228, 230 (6th Cir. 1990); and Kirk v. Secretary, 667 F.2d 524, 538 (6th Cir. 1981). Regarding Plaintiff's credibility, the ALJ concluded, "[a]fter consideration of the

11

evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the type of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Docket Entry No. 10, Administrative Record at 19).

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. See, e.g., Walters, 127 F.3d at 531; and Kirk, 667 F.2d at 538. An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. Walters, 127 F.3d at 531 (citing Villarreal v. Secretary, 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. See Walters, 127 F.3d at 531 (citing Bradley, 682 F.2d at 1227; cf King v. Heckler, 742 F.2d 968, 974-75 (6th Cir. 1984); and Siterlet v. Secretary, 823 F.2d 918, 921 (6th Cir. 1987)). Here, the ALJ's decision specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and her subjective claims, clearly indicating that these factors were considered. (Docket Entry No. 10, Administrative Record at 19-22). It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims regarding her mental conditions, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations.

For these reasons, the Court concludes that the ALJ's decision is supported by substantial

evidence and should be affirmed.

An appropriate Order is filed herewith.

**ENTERED** this the 26th day of March, 2015.

_____
WILLIAM J. HAYNES, JR.
Senior United States District Judge